# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

VINCENT T.[1]

          Plaintiff,

   v.

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not
reserved to the Commissioner of Social
Security,

          Defendant.

Case No. 3:17-cv-00152-SI

**OPINION AND ORDER**

Bruce W. Brewer, PO Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Mr. Vincent T. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the following reasons, the Commissioner's decision is REVERSED and REMANDED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff filed an application for SSI on March 18, 2013, and an application for DIB on April 30, 2013. AR 187-189. In both applications, Plaintiff alleged disability beginning August 30, 2008. Plaintiff's date of birth is February 10, 1965, and he was 43 years old on the alleged disability onset date. AR 187. Plaintiff alleged disability due to knee osteoarthritis, tubes in his ears with hearing loss, hypertension, back pain, depression, a learning disability, attention deficit hyperactivity disorder ("ADHD"), asthma, anger outbursts, alcohol dependence in sustained full remission, and drug dependence in early full remission. AR 196. The Commissioner denied Plaintiff's application initially and again on reconsideration. AR 127-134, 140-145. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 146. An administrative hearing was held on June 8, 2015. AR 31. The ALJ concluded Plaintiff was not disabled from August 30, 2008 through the date of the decision on July 13, 2015. AR 11. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-5. Plaintiff now seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The
Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the
Commissioner must show that the claimant can perform other work that exists in significant
numbers in the national economy, "taking into consideration the claimant's residual functional
capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966
(describing "work which exists in the national economy"). If the Commissioner fails to meet this
burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,
the Commissioner proves that the claimant is able to perform other work existing in significant
numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;
*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ first found that Plaintiff met the insured status requirements of the Social
Security Act through September 30, 2011. AR 13. Thus, for Plaintiff's DIB claim, he must
establish disability on or before that date. The ALJ then conducted the sequential analysis. At
step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since
August 30, 2008, the alleged onset date. AR 13. At step two, the ALJ found Plaintiff had the
following severe impairments: meniscus tear in the left knee, tubes in the ears with some hearing
loss, a learning disorder, and depression. AR 13. At step three, the ALJ found that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the regulations. AR 15.

The ALJ then determined that Plaintiff retained the RFC to perform light work with the following limitations:

> He can stand and walk 2 hours total out of an 8-hour workday. He can sit 6 hours total in an 8-hour workday. He may need to use a cane when walking. He can occasionally climb ramps and stairs; but he should not climb ladders, ropes and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He should avoid even moderate exposure to hazards, such as unprotected heights and exposed moving mechanical parts. He can understand and remember simple instructions. He has sufficient ability to maintain concentration, persistence, or pace to complete simple, routine tasks in 2-hour increments for a normal workday and workweek with normal breaks. He should not work with the general public. He can work around a small number of coworkers. He should work in an independent setting with limited oversight. He is able to accept predictable supervision based on objective performance standards. He should have additional time initially to learn tasks. He should not be exposed to loud industrial noise.

AR 18. At step four, the ALJ found Plaintiff unable to perform any past relevant work. AR 24. At step five, the ALJ identified three jobs in the national economy that Plaintiff could perform based on his age, education, work experience, and RFC. The ALJ concluded that Plaintiff was not disabled. AR 26.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) rejecting Plaintiff's subjective symptom testimony; (B) rejecting the testimony of an examining physician and reviewing psychologists; (C) rejecting lay witness testimony; (D) consulting a vocational expert ("VE") instead of relying on the Medical-Vocational Guide ("Grids"); (E) diverging from the Dictionary of Occupational Titles ("DOT") without proper explanation; and (F) requiring employer accommodation in the RFC.

**A. Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. The Court agrees. The ALJ provided several reasons for his credibility finding, but failed to explain how specific evidence undermined specific symptom testimony.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

In making a credibility determination, the ALJ may compare the plaintiff's symptom testimony to the following evidence: objective medical evidence, the plaintiff's daily activities, observations of treating physicians, the plaintiff's failure to seek medical treatment, and the plaintiff's failure to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's complaints concerning the "intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 19. The ALJ identified five reasons for discrediting Plaintiff's subjective symptom testimony: (1) inconsistencies between Plaintiff's reported daily activities and his alleged symptoms; (2) work activity after the alleged onset date; (3) failure to comply with recommended medical treatment; (4) effective treatment; and (5) inconsistency with objective medical evidence. AR 22-23.

### 1. Daily Living Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as

to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."
(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587,
594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled.");
*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be
inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and
noting that "disability claimants should not be penalized for attempting to lead normal lives in
the face of their limitations."). Moreover, particularly with certain conditions, cycles of
improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated
instances of improvement over a period of months or years and to treat them as a basis for
concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017
(9th Cir. 2014).

The ALJ concluded that Plaintiff's daily living activities contradicted his testimony of
symptoms preventing "all work." The ALJ highlighted the fact that Plaintiff "performed personal
care activities independently, shopped in stores, prepared meals, did yard work, rode public
transportation" and swam twice per week. AR 22-23. Plaintiff's daily living activities are
minimal. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Further, the ALJ did not
explain how these minimal activities undermined Plaintiff's symptom testimony. The ALJ did
not identify, for example, where in the record Plaintiff alleged that his symptoms prevented "all
work." AR 23. To the contrary, Plaintiff stated during the hearing that he would "definitely" take
a job in which he could sit for most of the day. AR 64.

The ALJ also took issue with the long hours Plaintiff spent driving during one vacation
after the date of alleged onset. AR 23. The ALJ, however, did not then identify specific symptom
testimony undermined by this driving and instead stated in general terms that the "alleged

symptoms and limitations may have been overstated." AR 23. This is insufficient. An ALJ "must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (noting that "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"); *Dodrill*, 12 F.3d at 918 (It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible. He must either accept [claimant's] testimony or make specific findings rejecting it." (quotation marks and citation omitted) (alteration in original)). Moreover, the record does not reveal such an overstatement; this vacation ultimately exacerbated the knee and back pain to which Plaintiff testified. AR 634.

The ALJ also concluded that Plaintiff's enjoyment of parasailing and scuba diving undermined the "level of functional limitation alleged at the hearing." AR 22-23. The ALJ overstated Plaintiff's engagement in these activities. Plaintiff told his ear surgeon that he enjoyed parasailing and scuba diving, but never indicated that he *participated* in such activities after the onset of his alleged disability. The doctor's report reads as follows: "He also likes to parasail as well as scuba dive, and those things are just prohibitive for him at this point with his chronic mastoid history." AR 450. This testimony is consistent with Plaintiff's symptom testimony. Accordingly, Plaintiff's activities of daily living were not a clear and convincing reason to discount Plaintiff's subjective testimony regarding his limitations.

### 2. Work Activity After the Alleged Onset Date

The ALJ found that Plaintiff's engagement in work activity after the alleged onset date, although not substantial gainful activity, "does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." AR 23. Plaintiff worked as a part-time gardener for five months in 2012, which required him to walk and

stand for three to four hours a day. AR 241. Plaintiff testified at the administrative hearing that he had a "hard time walking for . . . three hours or less" due to knee pain. AR 63. Although for this example the ALJ pointed to specific evidence, the ALJ failed to specify how this work activity undermined Plaintiff's symptom testimony. Plaintiff's testimony that he had a hard time walking for three hours due to knee pain is not necessarily inconsistent with the fact that he attempted a job for five months that required him to walk and stand in combination for three-to-four hours. Accordingly, this is not a clear and convincing reason to discount Plaintiff's subjective testimony regarding his limitations.

### 3.   Failure to Follow a Prescribed Course of Treatment

The ALJ concluded that Plaintiff's "symptoms may not have been as serious as has been alleged" because Plaintiff failed to follow recommendations made by his treating ear doctor. AR 23. Although an ALJ may consider the plaintiff's failure to follow a prescribed course of treatment when weighing the plaintiff's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008), the ALJ must also consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* Social Security Rule ("SSR") 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017) ("We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.").

The ALJ summarily states that Plaintiff's "noncompliance with his doctor's instructions had caused his ears to deteriorate." AR 19. Evidence of Plaintiff's "noncompliance" is ambiguous. Plaintiff underwent a tympanomastoidectomy, bilateral myringotomy with tube placement on September 30, 2010. AR 412. He attended follow up appointments, including on January 28, 2011 and February 18, 2011, where he reported good results from his ear surgery.

AR 325, 329. At the January appointment, Plaintiff's doctor prescribed him with peroxide drops for two weeks to remedy the "crust" that had developed in the tubes in his ears. AR 441. At Plaintiff's February appointment, his doctor noted that his ears appeared fine and that Plaintiff did not need to return until a regular checkup in August or September. AR 442. Plaintiff visited his doctor again on July 15, 2011, due to "squishiness and odor coming from his ears." AR 445. The doctor attributed the decline of Plaintiff's ear health to his use of the peroxide drops beyond the two-week prescription. AR 445. The record is unclear when Plaintiff began using the drops again, why he began using them, or whether the doctor instructed Plaintiff *not* to use the peroxide drops at any time in the future if Plaintiff began having problems. Thus, it is unclear whether Plaintiff in fact was "noncompliant." The ALJ erred by neglecting to ask Plaintiff for an explanation of his noncompliance or to examine the record for any reasonable explanation of Plaintiff's noncompliance. *See Smolen*, 80 F.3d at 1284; *see also* Social Security Rule ("SSR") 16-3p, *available at* 2017 WL 5180304 (Oct. 25, 2017).

Moreover, the ALJ did not explain how Plaintiff's alleged noncompliance undermined all of his symptom testimony. Plaintiff testified to difficulties with his hearing. AR 67. He also testified to knee pain, back pain, and difficulty getting along with others. AR 63-70. The ALJ did not explain how use of prescribed peroxide drops beyond the original prescription implicated Plaintiff's testimony regarding his knee and back pain or interpersonal limitations. Accordingly, the ALJ did not provide clear and convincing reasons for finding an inconsistency between Plaintiff's failure to follow a treatment plan and Plaintiff's symptom testimony.

### 4. Effective Medical Treatment

The ALJ also discounted Plaintiff's subjective testimony because the ALJ found that Plaintiff's depression was effectively treated. AR 23. A nurse practitioner diagnosed Plaintiff with depressive disorder in 2012, and, by 2013, a social worker recorded his depression in

remission. AR 519. Plaintiff's depression, however, did not completely subside. By 2014, Plaintiff alleged worsening of his depression. AR 116. The ALJ concluded that Plaintiff's depression was a "severe impairment." AR 15.

Effective treatment may support an adverse credibility finding. *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). Here, though, the ALJ has not pointed to specific testimony undermined by the period of effective treatment. An ALJ may not pick out instances of improvement as a basis for rejecting all of Plaintiff's symptom testimony. *See Garrison v. Colvin*, 759 F.3d at 1017 ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). The ALJ did not provide clear and convincing reasons for his credibility finding on a basis of effective treatment.

### 5. Objective Medical Evidence

The ALJ improperly relied on objective medical evidence in his credibility finding. He found an inconsistency between Plaintiff's testimony of "muscular pain, joint pain, headaches, and depression" and a report indicating that his "gait and ambulation appeared intact." AR 19. An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883. Although the ALJ does point to the record and specify the relevant evidence and testimony, it remains unclear how

normal gait and ambulation contradict symptom testimony of joint and muscle pain, headaches, and depression. Moreover, because the Court has rejected the other reasons provided by the ALJ, even if this reason was sufficiently supported, it would be the only reason and lack of objective medical evidence cannot, by itself, support an adverse credibility finding.

### 6. Harmless Error

The ALJ's erroneous credibility finding is harmless because the RFC accurately incorporates the limitations asserted by Plaintiff. An ALJ's error is harmless if it is inconsequential to the ultimate non-disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Court looks to the record as a whole to determine whether the error alters the outcome of the case. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

Plaintiff summarily states that the RFC does not include Plaintiff's professed limitations. Plaintiff, however, does not identify the limitations to which he testified that are not included in the RFC. Although it is not the Court's responsibility to substantiate the arguments of the parties, the Court has examined the record to determine whether Plaintiff's symptom testimony asserted further limitations than were accounted for in the RFC. The Court finds to the contrary. The RFC was more restrictive than Plaintiff's testimony.

During the hearing, Plaintiff testified that he had a hard time walking for more than three hours. AR 63. The RFC included that Plaintiff can stand and walk for only two hours a day. AR 18. Plaintiff testified that he has a hard time getting along with others and does not take directions very well. AR 65-66. The ALJ determined that Plaintiff has the RFC to work in an independent setting with limited oversight, only around a small number of coworkers, but not with the general public. AR 18. Plaintiff testified that he proceeds at a "good" pace in completing tasks on the job. AR 67. Here, the RFC allowed Plaintiff additional time to learn new tasks.

AR 18. Because Plaintiff has not identified limitations to which he testified that were not incorporated into the RFC, the ALJ's erroneous rejection of Plaintiff's testimony is harmless.

## B. Medical Evidence

Plaintiff contends that the ALJ silently rejected portions of the testimony of examining psychologist Aaron Vederman, Ph. D. and two reviewing psychologists Joshua J. Boyd, Psy. D. and Margaret D. Nicoloff, Psy. D. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another

physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

### 1. Testimony of Examining Psychologist, Dr. Vederman

The ALJ gave "great weight" to Dr. Vederman's testimony. AR 21. Plaintiff argues that the ALJ silently rejected Dr. Vederman's opinion that Plaintiff should work "autonomously." The ALJ incorporated Dr. Vederman's opinion into the RFC by requiring that Plaintiff work "in an independent setting with limited oversight." AR 18. The issue is whether this requirement adequately incorporates "autonomously."

The word "autonomous" elicits more than one rational interpretation. Plaintiff argues that in light of Dr. Vederman's suggestion that Plaintiff work night shifts, Dr. Vederman's use of the word "autonomous" meant "virtually alone." Although Plaintiff's interpretation of Dr. Vederman's testimony may be a rational one, the ALJ's conclusion that "autonomous" requires an independent setting with limited oversight is also rational. Working in an "independent setting" comports with the common understanding of the word "autonomous." Further, Dr. Vederman's suggestion to work night shifts bore little weight on Plaintiff's long-

term limitations. Dr. Vederman stated that Plaintiff would be only "somewhat limited" to night shifts for the "short term." AR 496.

Where the record is subject to more than one rational interpretation and the ALJ's conclusion is rational, the Court must uphold the ALJ's conclusion. *See Burch*, 400 F.3d at 679. Thus, the ALJ properly included Dr. Vederman's opinion in the RFC and did not silently reject Dr. Vederman's opinion. *See Guembes v. Berryhill*, 2017 WL 4330779, at *4 (Sept. 29, 2017) ("An ALJ is not required to provide reasons to discount an opinion where the ALJ does not reject the conclusions but rather incorporates them into an RFC assessment that is consistent with the opinion.").

### 2. Testimony of Reviewing Psychologists

Plaintiff similarly contends that the ALJ erred by failing to include every limitation listed by reviewing psychologists Drs. Boyd and Nicoloff. In his report, Dr. Boyd indicated that Plaintiff "should be able to manage some direction given by superiors, provided this is conveyed in a professional manner." AR 96. The ALJ gave "significant weight" to Dr. Boyd's opinions and incorporated his testimony in the RFC. AR 21. The RFC limited Plaintiff to jobs in which he would receive "predictable supervision based on objective performance standards." AR 18. The requirement of "predictable supervision" and "objective performance standards" are rational interpretations of Dr. Boyd's opinion that Plaintiff should be given direction in a "professional manner." The Court upholds the ALJ's rational interpretation. *See Burch*, 400 F.3d at 679.

In her report, Dr. Nicoloff marked that Plaintiff was "moderately limited" in his ability to interact appropriately with the general public and "moderately limited" in his ability to get along with coworkers. AR 88. The RFC indicated that Plaintiff "should not work with the general public" and "can work around a small number of coworkers" and thus incorporated

Dr. Nicoloff's opinion. The ALJ did not err because the RFC incorporated the limitations listed by reviewing psychologists Drs. Boyd and Nicoloff.

## C. Lay Witness Testimony

Plaintiff contends that the ALJ erroneously rejected the testimony of Plaintiff's mother and stepfather. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no

reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In her third party function report, Plaintiff's mother stated that Plaintiff's knee and back problems, depression, and ADHD limited his ability to work. AR 218. In Plaintiff's stepfather's third party function report, he stated that Plaintiff's knee problems, depression, inability to take directions well, speech problems, and inability to get along with other workers limited his ability to work. AR 259. Although the ALJ gave the lay testimony "some weight," the ALJ ultimately found it "less than wholly credible." AR 22. The ALJ rejected the lay testimony "for the same reasons" used to reject the Plaintiff's symptom testimony. AR 22. Because the ALJ invalidly rejected Plaintiff's symptom testimony, the ALJ has not provided a germane reason for rejecting the lay testimony. For the reasons discussed in section A(6), however, the ALJ's error is harmless because Plaintiff did not identify further limitations asserted by the lay witnesses not incorporated in the RFC.

## D.  The ALJ's Use of the Grids

Plaintiff contends that the ALJ erred by consulting the "light exertion" category of the Grids instead of the "sedentary exertion" category. The ALJ may apply the Grids or consult a VE in step five. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1995). If the claimant suffers from exertional and non-exertional limitations, as Plaintiff does in this case, the ALJ must consult the Grids first to determine if the claimant is "disabled" based on exertional limitations alone. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). The ALJ may not, however, solely rely on the Grids to conclude a claimant with exertional and non-exertional limitations is "not disabled." *Id*. at 1116. If the claimant has "sufficiently severe" non-exertional limitations, the ALJ must take testimony from a VE. *Burkart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Non-exertional limitations are "sufficiently severe" when they "significantly limit the range of

work permitted by the claimant's exertional limitations." *Id*. The ALJ may depart from the Grids and consult a VE even if the plaintiff's limitations erode his occupational base. SSR 83-12, *available at* 1983 WL 31253, at *2 (Jan. 1, 1983); *Barstad v. Chater*, 1996 WL 29255, at *2 (9th Cir. Jan. 25, 1996).

The ALJ began the step five analysis by consulting the Grids and appropriately called a VE because Plaintiff's non-exertional limitations significantly restricted the range of work permitted by his exertional limitations. AR 25. Although Plaintiff could not perform all jobs within the "light" category, he could perform some. *See* SSR 83-10, *available at* 1983 WL 31251, at *5 (Jan. 1, 1983) ("A job is also in [the light] category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls."). Thus, in accordance with the step five framework, the ALJ then called a VE to determine whether Plaintiff could perform any jobs in the national economy based on Plaintiff's age, education, work experience, and RFC. Because Plaintiff had sufficiently severe non-exertional limitations and could perform some work within the "light" category of the Grids, the ALJ followed the appropriate steps by first consulting the Grids and then calling a VE. Plaintiff incorrectly asserts that the ALJ should have solely relied on the Grids to make a finding of "disabled."

### E. Divergence from the DOT

Plaintiff argues that the ALJ erred in accepting VE testimony that conflicted with the DOT, without obtaining a reasonable explanation. Plaintiff contends that the VE testimony conflicts with the DOT in two ways. Plaintiff first argues that it conflicts because the jobs identified do not comport with Plaintiff's need for "a predictable supervisor, extra time, and a workplace with only a small number of co-workers." Plaintiff next argues that that the VE testimony conflicts with Plaintiff's standing and walking limit of two hours per day.

If the ALJ calls a VE, the ALJ has an affirmative duty to determine whether the VE's testimony diverges from the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). If the testimony does diverge, the ALJ must then ask the VE for an explanation of the apparent conflict. *Id.* "To deviate from the DOT classification, an ALJ 'may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995)). For the VE's testimony to conflict with the DOT and trigger the ALJ's duty to obtain a reasonable explanation, the potential conflict must be "obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). That is, the testimony must conflict with an "essential, integral, or expected" aspect of the DOT's job requirements. *Id.* VE testimony does not conflict with the DOT solely because the claimant can only perform work within a subcategory of jobs in the DOT. *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995).

Plaintiff's first argument lacks merit because the DOT classification for the jobs identified by the VE does not directly conflict with Plaintiff's non-exertional limitations. The RFC limits Plaintiff to working under predictable supervision, in an independent setting with only a small group of coworkers, with additional time to learn new tasks, and apart from the public. AR 18. Plaintiff has not asserted evidence from the DOT that reveals any contradiction with these limitations. Further, the DOT descriptions of a price marker, production assembler, and agricultural produce sorter do not refer to coworkers or to the public. DOT 209.587-034; DOT 529.687-186; DOT 706.687-010. Thus, the jobs provided by the VE do not infringe on Plaintiff's non-exertional limitations.

With respect to Plaintiff's second argument, there was a conflict between the DOT and the jobs identified by the VE. Although the ALJ did obtain an explanation from the VE of the divergence from Plaintiff's exertional limitations, the VE's explanation was not persuasive. The DOT classifies all of the jobs identified by the VE as "light." Most "light" jobs require six hours of standing or walking per day. SSR 83-10, *available at* 1983 WL 31251 (Jan. 1, 1983). Relatively few unskilled "light" jobs are performed in the seated position. *Id.* As the number of hours spent sitting or standing is an essential aspect of a job requirement, a conflict regarding time sitting or standing is considered obvious and apparent. *See, e.g.*, *Coleman v. Astrue*, 423 F. App'x 754, 756 (9th Cir. 2011) (finding an apparent conflict between the plaintiff's walking and standing limitation and the standing required by "light" work in the DOT). The standing requirement of the jobs identified by the VE conflicted with Plaintiff's limitation of standing or walking for only two hours per day, and this conflict was obvious and apparent. Thus, the ALJ had the affirmative duty to ask the VE for an explanation of the conflict. *See Massachi*, 486 F.3d at 1153.

During the hearing, the ALJ asked the VE if a price marker could stand and walk only two hours in an eight-hour workday. AR 48. In response, the VE noted that price markers "do a lot of sitting." AR 48. Next, after the VE testified that an individual with Plaintiff's RFC could be a production assembler or agricultural produce sorter, the ALJ asked if the testimony was "consistent" with the DOT. AR 49. The VE answered in the affirmative. AR 49. The ALJ also asked the VE to clarify whether the DOT conflicted with Plaintiff's standing and walking limitation. AR 49. In response, the VE acknowledged that the DOT accommodated this Plaintiff's abilities only to a "limited amount." AR 49. The VE's statement that the latter two "light" positions being performed by a person who can only stand and walk for two hours was

consistent with the DOT was incorrect, and the follow-up cursory explanation that the standing and walking limitation was accommodated to a "limited amount" is not a persuasive explanation. Similarly, the general statement that price marker does "a lot of sitting" is not a persuasive explanation that a price marker will not walk or stand the requisite six hours instead of the only two hours allowed in Plaintiff's RFC. Thus, substantial evidence does not support the ALJ's step five finding.

## F.  Employer Accommodation Required by the RFC

Plaintiff contends that the RFC necessarily required an employer accommodation and thus precludes the ALJ's finding of "not disabled." The RFC stated that Plaintiff should work with limited oversight, predictable supervision, and additional time to learn new tasks. AR 18. Plaintiff takes issue with the "additional time" in the RFC and argues that, by definition, it requires employer accommodation and necessitates a finding of "disabled."

The Social Security Administration prohibits consideration of a plaintiff's ability to perform work in the national economy that would require employer accommodation. SSR 11-2p, *available at* 2011 WL 4055665, at *9 (Sept. 12, 2011). Plaintiff's argument rests on the assumption that the RFC allowed Plaintiff "additional time" as compared to other workers. The Court concludes that the RFC limited Plaintiff to jobs that allow him "additional time" as compared to other jobs in the economy. That is, the ALJ prohibited Plaintiff from working in fast-paced environments. RFCs that offer plaintiffs "additional time" have been affirmed by district courts in the Ninth Circuit. *See, e.g., Norton v. Colvin*, 2015 WL 1015618 (E.D. Wash. Mar. 9, 2015); *Danley v. Astrue*, 2011 WL 4434898 (E.D. Wash. Sept. 22, 2011). "Additional time" in the RFC does not *per se* require employer accommodation as Plaintiff contends.

## G.  Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100.

The ALJ failed to elicit a persuasive explanation of the conflict between VE testimony and the DOT. Thus, further proceedings are necessary to properly resolve this case at step five. Because ambiguities remain in the record, this case is not appropriate for a remand for an immediate payment of benefits. *Id.*

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED this 20th day of July, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge